UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | File No. 1:08-cr-00033-jgm-1 |
| | : | |
| SAMUEL JEFFREY JONES, | : | |
| Defendant | : | |

ORDER REGARDING DEFENDANT'S ABILITY TO HEAR

    Defendant Samuel Jeffrey Jones is charged with eleven counts relating to cocaine trafficking, possession of firearms, and false reporting of terrorist activity.  On December 18, 2009, defense counsel filed a motion to determine competency, noting Jones "is a brittle diabetic and . . . his diabetes is not well controlled," and suggesting Jones might be suffering from mental "deficits" as a result of the diabetes.  Paper 137-1 ¶¶ 3, 7.  In addition to mental issues, counsel also brought to the Court's attention that Jones "maintains . . . he cannot hear and refuses to remain in the room with counsel to discuss his case."  Paper 137-1 ¶ 7.

    In order to deal with physical competency first, the Court ordered a hearing to examine Jones's ability to hear.  See United States v. Knohl, 379 F.2d 427, 437 (2d Cir. 1967) ("[I]t will usually be the better course, where there is reasonable ground to believe that physical disability may prevent a proper defense . . . for the trial court to hold an evidentiary hearing . . . .").  Prior to the hearing, the Court ordered auditory

testing for Jones, and the Vermont Department of Corrections provided medical records relating to the defendant. At the hearing, the Court received testimony from four witnesses regarding Jones's ability to hear.

I. Applicable Law

Unlike determining mental competency, "no statutory standard exists for [determining] whether a defendant is physically incompetent to stand trial." United States v. Reddy, No. 01 CR 0058, 2003 WL 22339464, at *3 (S.D.N.Y. Oct. 14, 2003); see also United States v. Jones, 876 F. Supp. 395, 397 (N.D.N.Y. 1995). Accordingly "the Second Circuit has long held that the granting or denying of a motion for continuance or severance on the ground that the accused is physically incompetent to stand trial falls within the sound discretion of the trial court." Jones, 876 F. Supp. at 397.

In exercising their discretion, district courts within the Second Circuit have used a five-factor approach set forth in United States v. Doran, 328 F. Supp. 1261 (S.D.N.Y. 1971). See, e.g., Reddy, 2003 WL 22339464; United States v. Gigante, 987 F. Supp. 143 (E.D.N.Y. 1996); United States v. Gambino, 809 F. Supp. 1061 (S.D.N.Y. 1992). In Doran, the court suggested examining (1) medical evidence on the defendant's physical condition, (2) the defendant's activities outside the courthouse, (3) measures to minimize the risk to the defendant's health, (4) the

usefulness of delay, and (5) the seriousness of the case. See Doran, 328 F. Supp. at 1263.  The Doran court used the third factor because it faced a situation where the defendant was at risk of adverse health effects if forced to go to trial.  Because this case does not involve a health risk to Jones, the third factor is not relevant here.

II. Factual Findings

Organized into the four relevant categories from Doran, the Court makes the following factual findings.

A. Medical Evidence

On December 19, 2008, Jones was evaluated by Jennifer Audette, MS, with unreliable results.  See Paper 153-1 at 1.  He described a moderately severe hearing loss in his right ear, and a severe hearing loss in his left.  His speech reception thresholds, however, were 20-25 dB better than would be expected from the pure tone results.  Paper 152-1.

Jones was re-tested on January 20, 2010, again with no clear results.  This time Jones failed to respond to any auditory stimuli, "even when one would expect a vibro-tactile response of some sort."  Paper 153-1 at 1.  The examiner noted Jones's ears were clear, and he had no middle ear dysfunction.  Id.  A follow-up note remarked that the January 20 test results were "not compatible with observations of response to auditory stimuli in day-to-day life."  Id. at 2.

The Court then ordered Auditory Brainstem Response (ABR) testing for Jones, a method of auditory testing that does not rely on subjective reporting by the patient. Paper 147. On April 7, 2010, Jones was taken to the Dartmouth-Hitchcock Medical Center for ABR testing, but refused the test. The medical report describes the interaction that occurred:

> When the audiologist attempted to examine [Jones's] ears to insure that the ear canals were free of occlusive cerumen and to determine the size of insert earphone required, Mr. Jones requested that [the audiologist] not touch his ears because they were sore today. Mr. Giordano . . . explained to Mr. Jones that we were attempting to do the test he was scheduled for. Mr. Jones stated that he was told we would be putting headphones on him and that nothing was mentioned about us sticking things in his ears. After some back and forth . . . Mr. Jones stated "I have the right to refuse treatment?" When Mr. Giordano confirmed this, Mr. Jones stated "Then I am refusing treatment."

Paper 152-1. The testing was then abandoned.

After the evidentiary hearing on May 5, 2010 (at which Jones was wholly non-responsive), the Court gave Jones a final opportunity for auditory testing. To avoid wasting medical resources, the Court first ordered defense counsel to ask the defendant verbally and in writing whether he would cooperate with ABR testing. See Paper 158. When defense counsel went to Southern State Correctional facility to visit Jones and carry out the order, however, Jones refused to see her. He also refused her later telephone call. See Paper 159.

Overall, the Court finds there is no medical evidence that Jones is unable to hear.  Rather, the evidence suggests Jones in fact can hear and is intentionally being non-responsive.  The first test provided "very unreliable" results, Paper 153-1 at 8, and depended on Jones's subjective reporting, which the Court finds not credible.  The second test simply demonstrates Jones's refusal to respond; were he truly unable to hear, he would have shown some response to vibro-tactile stimuli.  Jones's refusal to take the ABR test confirms his deliberate non-cooperation, and demonstrates that he in fact can hear — since in the course of refusing the ABR test, Jones conversed with staff with no apparent difficulty, to inquire about the test and express his refusal.  His most recent refusal to see defense counsel is further circumstantial evidence of an ability to hear, as it suggests he was listening during the May 5, 2010 hearing and knew the purpose for which defense counsel was contacting him.

B.  Defendant's Activities Outside the Courtroom

At the May 5, 2010 hearing, the government called four witnesses to testify about Jones's conduct in prison.  The first witness was Alex Remolador, a case worker at Southern State Correctional Facility (SSCF) in Springfield, Vermont.  Mr. Remolador was Jones's case worker for about two years, and he testified that he had verbal conversations with Jones at least two times per month, most recently in March 2010.  According to

5

Mr. Remolador, Jones was able to listen and reply without substantial difficulty when spoken to in a normal tone of voice. Mr. Remolador also noted Jones received audio books and a special talking watch as an accommodation for his blindness, and in the commissary, Jones responded to verbal prompting to sign certain paperwork so he could receive his items.

The government next called Macy Holmquist, a case worker at SSCF who was assigned to Jones for a period of about five months. Ms. Holmquist testified she had communicated verbally with Jones using a normal tone of voice, and that he responded appropriately, in ways suggesting he was able to hear her. Ms. Holmquist also described Jones responding to verbal cues to sign commissary paperwork.

The third witness was Craig Sabourin, a correctional officer at SSCF who supervised C-unit, where Jones was housed. Mr. Sabourin testified that he interacted with Jones verbally, in the context of cell inspections and advising Jones about his diabetes. According to Mr. Sabourin, Jones responded when spoken to, either by nodding his head or saying "okay," and was able to follow verbal directions. Mr. Sabourin also noted he had observed Jones communicating verbally with other inmates, while bartering commissary items.

Finally, the government called Michael Peterson, a correctional officer at SSCF who worked the morning shift in

6

C-unit. Mr. Peterson testified that he occasionally spoke with Jones, although it would often require two or more verbal prompts to get Jones's attention. According to Mr. Peterson, Jones responded better when addressed in a loud voice; when spoken to this way was able to respond verbally. Mr. Peterson also testified that he observed Jones listening to his audio books in his cell.

The Court finds all four witnesses to be credible. Based on the testimony presented, Jones appears able to hear — at least to a degree sufficient for communication — outside the courtroom. This further indicates Jones is simply stonewalling, and his alleged inability to hear is either exaggerated or fabricated entirely.

### C. Usefulness of Delay

The government pointed out at the May 5, 2010 hearing that delay in this case only serves Jones's interests. Evidence is growing old, witness's memories are fading, and other defendants are waiting to testify at Jones's trial before they are sentenced. These factors counsel against delay. Furthermore, there is no benefit from waiting, as Jones's alleged "ailment" is not likely to improve with time.

### D. Seriousness of the Case

This case involves a substantial cocaine distribution ring, of which Jones is alleged to be the leader. As noted by the

7

court in Doran, "We ought to care more — and we do in fact care more — about resolving charges of large-scale crime or of grave crimes than we do about relatively minor individual cases." Doran, 328 F. Supp. at 1263. Jones's alleged crime does not resemble the relatively minor crimes for which continuances have been granted. See, e.g., id. (involving making false claims regarding payment for mail carriage and defrauding the government). Accordingly, the seriousness of this case weighs in favor of proceeding to trial.

IV. Conclusion

In light of the above factors, the Court finds Jones physically competent to stand trial. His claimed inability to hear is not borne out by the evidence; rather, he appears able to hear and communicate verbally when it serves his needs. If he chose to, Jones could communicate with counsel, assist in his defense, and testify on his own behalf.[1]

There is no reason to delay this case further based on Jones's malingering. The Court will proceed with the hearing on July 2, 2010 regarding mental competency, and if Jones is found mentally competent, a jury will be drawn for this case on July 13, 2010, and trial will be scheduled for the two weeks beginning July 26, 2010.

---

[1] If the defendant has some legitimate difficulty hearing — deliberate stonewalling aside — the Court can make accommodations with assistive devices.

Defense counsel should represent Jones to the best of her ability. To the extent he continues to be unresponsive, that is his choice; the defendant cannot complain about it later if he refuses to participate now. See, e.g., Hunter v. Delo, 62 F.3d 271 (8th Cir. 1995) (holding a defendant's refusal to communicate with attorney and court provides grounds for rejecting a later Sixth Amendment right-to-counsel challenge); Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985) ("A defendant, by unreasonable silence or intentional lack of cooperation, cannot thwart the law as to appointment of counsel."); People v. Henriquez, 818 N.E.2d 1125 (N.Y. 2004) (finding a defendant's refusal to participate in case waived his constitutional right to effective assistance of counsel).

As a final note, the Court reminds the defendant that, should he continue his refusal to communicate, the prosecution can request a two-point enhancement at sentencing for obstruction of justice under U.S.S.G. § 3C1.1. See United States v. Bininon, 132 F. App'x 89 (8th Cir. 2005) (unpublished).

Dated at Brattleboro, in the District of Vermont, this 24th day of June, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge